# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**MICHAEL ROBERT MURRAY,**

    **Plaintiff,**

v.                                              Case No: 6:16-cv-1455-Orl-DCI

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## MEMORANDUM OF DECISION

Michael Robert Murray (Claimant) appeals to the District Court from a final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income benefits. Doc. 1; R. 1-6, 319-26, 334-35. Claimant argues that the Administrative Law Judge (the ALJ) erred by: 1) failing to properly reject the opinion of Claimant's treating psychologist, Dr. Fleischmann; and 2) erroneously relying upon the opinions of Dr. Bauer, Dr. Klein, and Dr. Magness when finding that Claimant was capable of performing simple work. Doc. 17 at 15-21, 27-30. For the reasons set forth below, it is **ORDERED** that the Commissioner's final decision is **AFFIRMED**.

### I. THE ALJ'S DECISION

On September 30, 2011, Claimant filed applications for disability insurance benefits and supplemental security income benefits. R. 319-26, 334-35. Claimant alleged a disability onset date of November 6, 2008. *Id*.

The ALJ issued her decision on February 27, 2015. R. 12-25. In her decision, the ALJ found that Claimant had the following severe impairments: obesity, lumbar strain, and attention-

deficit hyperactivity disorder (ADHD). R. 14. The ALJ found that Claimant had a residual functional capacity (RFC) to perform a reduced range of sedentary work as defined by 20 C.F.R. §§ 404.1567(a) and 416.967(a).[1] R. 16. Specifically, the ALJ found as follows:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can lift ten pounds occasionally and ten frequently; the claimant can stand and walk for up two hours and sit for up to six hours in an eight-hour day; he can occasionally climb; he is limited to performing simple tasks.

R. 16. The ALJ posed a hypothetical question to the vocational expert (VE) that was consistent with the foregoing RFC determination,[2] and the VE testified that Claimant was capable of performing jobs in the national economy. R. 66-68. The ALJ thus found that Claimant was capable of performing jobs that existed in significant numbers in the national economy. R. 23-24. Therefore, the ALJ found that Claimant was not disabled between the alleged onset date and the date of her decision. R. 24.

## II.     STANDARD OF REVIEW

"In Social Security appeals, [the court] must determine whether the Commissioner's decision is 'supported by substantial evidence and based on proper legal standards.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a); 416.967(a).

[2] The Court notes that the ALJ asked the vocational expert to assume that Claimant could lift 10 pounds occasionally and less than 10 pounds frequently. R. 67.

create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

### III. ANALYSIS

#### A. Failure to Properly Weigh Treating Physician's Opinion

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238. "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c); 416.946(c). In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of treating, examining, and non-examining medical sources. 20 C.F.R. §§

404.1545(a)(1), (3); 416.945(a)(1), (3); *see also Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

The weighing of treating, examining, and non-examining physicians' opinions is an integral part of steps four and five of the sequential evaluation process. In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit stated that: "'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.'" *Id*. at 1178-79 (quoting 20 C.F.R. § 404.1527(a)(2)) (alterations in original). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Id* at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id*. (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).

The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. §§ 404.1527(c); 416.927(c). A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary. *Winschel*, 631 F.3d at 1179; *see also* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent

with other substantial evidence). "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel*, 631 F.3d at 1179 (quotation marks omitted).

Here, Claimant argued that the ALJ erred by giving the opinion of David J. Fleischmann, Ph.D. "less weight." Doc. 17 at 15-21. Specifically, Claimant argued that Dr. Fleischmann's opinion is consistent with the record as a whole and that the record is "replete with instances of [Claimant's] problems acting with other people." *Id*. at 18-21. Claimant also argued that the ALJ's statement – that Dr. Fleischmann's opinion also conflicts with the claimant's scores on the WAIS-IV – is a "sweeping generalized statement which contains no specifics." *Id*. at 21. Claimant failed to address any of the other reasons provided by the ALJ for assigning "less weight" to Dr. Fleischmann's opinion. *Id*. at 15-21.

The Commissioner argued that the ALJ properly considered the medical evidence of record and gave the opinion of Dr. Fleischmann "less weight." *Id*. at 22-27. The Commissioner argued that the reasons provided by the ALJ for giving Dr. Fleischmann's opinion "less weight" were supported by substantial evidence. *Id*. at 25-27. The Commissioner further argued that "Dr. Fleischmann's statement that Plaintiff was not capable of moving into the workforce addressed an issue reserved for the Commissioner." *Id*. at 27.

On February 11, 2014, Claimant presented to Dr. Fleischmann for evaluation. R. 880-88. Much of the information in Dr. Fleischmann's evaluation was self-reported by Claimant and his mother. R. 880-83. For instance, Claimant and his mother reported that Claimant had taken Ritalin in the past, but that Claimant was not taking any medications on the date of the evaluation; that Claimant enjoys fishing with a friend, watching TV, and driving around "aimlessly"; that Claimant

owns a truck on which he is making monthly payments; and that Claimant "mows a few yards and does other chores for neighbors." R. 880-82. Dr. Fleischmann observed that Claimant's hands, arms, and legs were dirty during the evaluation, and noted that Claimant presented to the evaluation "very casually and sloppily dressed." R. 882-83. Dr. Fleischmann noted that Claimant appeared to have been unshaven for weeks. R. 883. Dr. Fleischmann noted that Claimant was cooperative during the interview, but that there "seems to be a passive aggressive clement to his behavior." *Id*. Dr. Fleischmann also noted that Claimant "seems" to have a fascination or abhorrence of bodily functions that may be psychotic in nature. *Id*.

Dr. Fleischmann administered multiple tests to Claimant, including a WAIS-IV test, on which Claimant scored a 77. *Id*. After discussing Claimant's history in middle school, high-school, and his job at "Publix," Dr. Fleischmann concluded that in "more recent years, [Claimant] has deteriorated in his functioning." R. 886. Dr. Fleischmann stated that Claimant tends to be filthy all the time; that Claimant may have a phobic, if not psychotic, aversion to water and cleanliness; that Claimant's testing results did not document any learning disabilities; and that Claimant's reading, writing, and spelling skills tend to be low average. R. 887. Dr. Fleischmann noted that Claimant focused on his physical problems during the evaluation, and that Claimant's mother described Claimant's functioning as very poor in all areas. *Id*. Finally, Dr. Fleischmann stated that Claimant "does <u>not</u> demonstrate that he is ready or able to move into the workforce" because he "seems devoted to his filth, sloppiness, and even hoarding." *Id*. (emphasis in original).

Claimant and his family continued to see Dr. Fleischmann for family counseling until July 14, 2014, when Dr. Fleischmann determined that further counseling would be fruitless. R. 889-92. Dr. Fleischmann noted that Claimant had the social maturity of a nine-year-old and that Claimant "suffers from Asperger's Syndrome . . . in that he does not seem to profit from any kind

of social feedback." R. 891. Dr. Fleischmann stated that it was his belief that Claimant was "years away from developing the maturity and the responsibility so that he can be successful in competitive employment." *Id.*

Finally, on August 4, 2014, Dr. Fleischmann drafted a letter to Claimant's attorney wherein he stated that he was "quite convinced" that Claimant suffers from Asperger's Disorder in addition to Attention Deficit Disorder, Borderline Intellectual Functioning, and Personality Disorder with passive aggressive and obsessive compulsive features. R. 879. Dr. Fleischmann stated that as a result of Claimant's ADHD, social immaturity, Asperger's, Borderline Intellectual Functioning, and Personality Disorder, it was his opinion that Claimant was not capable of moving into the work force at that time, even on a part time basis. *Id.*

As an initial matter, the Court notes that Dr. Fleischmann's statements that Claimant is not capable of moving into the workforce are not medical opinions that must be weighed. Whether or not Claimant is capable of moving into the workforce is an issue left for the Commissioner to determine, not Dr. Fleischmann. 20 C.F.R. §§ 404.1527(d); 416.927(d); *see also Adams v. Comm'r., Soc. Sec. Admin.*, 586 F. App'x 531, 533-34 (11th Cir. 2014) (per curiam)[3]; *Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986) (per curiam). And to the extent that Dr. Fleischmann made statements that could arguably have needed to be weighed – for instance, that Claimant suffers from Asperger's Disorder and that Claimant seems devoted to filth and sloppiness – Claimant has not explained how these statements directly contradict the RFC. Nor does the Court find that these statements directly contradict the RFC. Thus, any error in purportedly failing to properly weigh these statements would have been harmless. *See, e.g.*, *Wright v. Barnhart*, 153

---

[3] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

F. App'x 678, 684 (11th Cir. 2005) (per curiam) (failure to weigh a medical opinion is harmless error if the opinion does not directly contradict the ALJ's RFC determination); *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (per curiam) (similar).

But regardless of the foregoing, even if the Court were to assume, for the sake of argument, that the ALJ would have been required to weigh Dr. Fleischmann's statements and that the failure to do so would not have been harmless error, the ALJ provided good cause for assigning "less weight" to Dr. Fleischmann's so-called opinions. Specifically, the ALJ stated as follows:

> As for other opinion evidence, [Dr. Fleischmann] provided family counseling to claimant and family. In a medical source statement dated August 4, 2014, Dr. Fleischmann stated, "I feel quite strongly that [Claimant] is not capable of moving into the work force, even on a part-time basis at this time" (Exhibit 19F/2). Dr. Fleischmann further opined that the claimant met the criteria of borderline intellectual functioning, personality disorder, and Asperger's disorder, in addition to his ADHD. The undersigned accorded Dr. Fleischmann's opinion less weight, as it is inconsistent with the record as a whole, including the consultative examination report. As noted, Dr. Magness attributed the claimant's disinterest in activities of daily living to his mother apparently compensating for him, which was also apparent from Mrs. Murray's testimony at the hearing. The undersigned also notes that Dr. Fleischmann's opinion is inconsistent with the claimant's ability to interact with others. During examinations, the claimant's behavior was cooperative and appropriate. While the claimant may not be motivated to clean his room or perform other household chores, this does not equate to an inability to engage in work activity. Although the claimant may have noted difficulty, the record reflects that he is able to initiate and maintain friendships, go fishing for two hours weekly, drive a vehicle, and use a computer to play video games, check email, and surf the internet (Exhibit 7F). Dr. Fleischmann's opinion also conflicts with the claimant's scores on the psychological tests including the WAIS-IV. The undersigned finds that while the claimant may have a severe mental impairment, it is not believed to be of disabling proportions. The claimant has not required psychiatric hospitalizations or extensive psychiatric treatment for mental health symptoms, despite Dr. Fleischmann's opinion. As noted, the claimant relies primarily on medication therapy for which he has not been entirely complaint [sic], per testimony.

R. 21-22. As stated by the ALJ, Dr. Fleischmann's opinion is inconsistent with the fact that Claimant was cooperative during examinations; is capable of maintaining friendships; goes fishing; drives a vehicle; uses a computer to play games, check email, and surf the internet; scored

77 on the WAIS-IV; has not required psychiatric hospitalizations or extensive psychiatric treatment; and has not been compliant with his medication. R. 50-51, 54-55, 397, 399-400, 427-28, 715-17, 880-81, 883-84, 887, 894    The ALJ also noted that Claimant spends only about two hours per day at home with the remainder of the day spent outside with friends. R. 20, 50-51.

Further, as stated by the ALJ, Dr. Fleischmann's opinion is inconsistent with Dr. Magness's consultative examination report. Dr. Magness's disability evaluation provided as follows: that Claimant can add, subtract, multiply and divide single digit and multiple digit numbers; that Claimant can work with fractions, do basic algebra, and work with percentages; that Claimant is able to dress and bathe himself without assistance; that Claimant graduated high school with a standard diploma; that Claimant reported average grades and good relationships with peers and teachers; that Claimant denied any major learning problems on the job; that Claimant reported pretty good relationships with coworkers and "OK" relationships with supervisors; that Claimant drives on a limited basis due to financial limitations limiting his ability to afford gas; that Claimant exhibited good basic functioning; that Claimant was cooperative and answered all questions asked of him; that rapport with Claimant was easy to establish; that Claimant was alert and well oriented; that Claimant did not evidence symptoms of psychosis and denied compulsions or obsessions; that Claimant did not show suicidal or homicidal tendencies; that Claimant demonstrated good recall of recent and remote events; that Claimant's speech and thought processes were goal-directed, logical, and coherent; that there was no evidence of a formal thought disorder; that Claimant exhibited a mild articulation problem; that Claimant reported earning money by helping friends move items with the use of the trailer on his car; that Claimant reported being able to initiate and maintain friendships; that Claimant reported an active social life that included fishing and hanging out with friends; that Claimant reported that an average day consisted of watching television,

listening to music, playing with his dog, and using the computer to play games, surf the internet, and email; that Claimant's overall intellectual ability was estimated to be in the borderline range on the WAIS-IV; that Claimant would likely be within the average range if Claimant's symptoms of inattention were properly controlled with medication; that Claimant's prognosis was fair; that Claimant reported that he is uninterested in continuing to take medications to treat his symptoms of ADHD; that Claimant should have his ADHD medications reassessed by a psychiatrist; and that Claimant's GAF score was 75. R. 712-19.

Given the foregoing, substantial evidence supports the ALJ's decision to give "less weight" to Dr. Fleischmann's so-called opinions. Claimant's citation to evidence that is purportedly consistent with Dr. Fleischmann's so-called opinions is unavailing. The issue is not whether there is substantial evidence to support Dr. Fleischmann's so-called opinions, but whether there is substantial evidence to support the ALJ's reasons for giving Dr. Fleischmann's so-called opinions "less weight." *Barnes*, 932 F.2d at 1358 ("Even if we find that the evidence preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence.") (citation omitted).

Claimant's citation to Dr. Fleischmann's statement that Claimant had deteriorated in recent years is also unavailing. Dr. Fleischmann appeared to be referring to a deterioration since Claimant had been in high-school and worked at "Publix," not since Claimant had begun applying for disability and had been evaluated by Dr. Magness. R. 886. Regardless, the evidence does not support a deterioration in Claimant's condition sufficient to negate all of the evidence that came before Dr. Fleischmann's evaluation. Claimant scored similarly on the WAIS-IV test when evaluated by Dr. Fleischmann and Dr. Magness, and nothing in Dr. Fleischmann's evaluation

evidences a significant deterioration of Claimant's condition since Claimant was evaluated and completed function reports in 2012.  R. 396-404, 424-31, 712-19, 879-92.

The Court is not persuaded by Claimant's remaining argument – that the ALJ's statement that Dr. Fleischmann's opinion conflicts with Claimant's WAIS-IV scores is a "sweeping generalized statement which contains no specifics."  Moreover, even if the Court were to be persuaded by Claimant's remaining argument, the ALJ provided sufficient alternative reasons for assigning Dr. Fleischmann's opinion "less weight."  *See D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 948 (11th Cir. 2010) (per curiam) (rejecting argument that ALJ failed to accord proper weight to treating physician's opinion "because the ALJ articulated at least one specific reason for disregarding the opinion and the record supports it."); *Gilmore v. Astrue*, 2010 WL 989635, at *14-18 (N.D. Fla. Feb. 18, 2010) (finding that the ALJ's decision to discount a treating physician's opinion was supported by substantial evidence, even though two of the many reasons articulated by the ALJ were not supported by substantial evidence).

**B.  Erroneously Relying Upon the Opinions of Dr. Bauer, Dr. Klein, and Dr. Magness**

Claimant argued that the ALJ erroneously relied upon the opinions of Dr. Bauer, Dr. Klein, and Dr. Mangess when determining that Claimant was capable of simple work.  Doc. 17 at 27-30.  Specifically, Claimant argued that it was error to rely on the opinions of Dr. Bauer and Dr. Klein because "there is no information in the record as to what either doctor's Ph.D. is in, so their mental health opinions can have no dispositive value at all – their Ph.D.'s could be in literature or any other subject."  *Id*. at 28.  Claimant also argued that Dr. Magness did not address Claimant's ability to maintain concentration, persistence, or pace or Claimant's ability to perform simple tasks, and therefore that there was no basis for the ALJ to rely on Dr. Magness's opinion in finding that Mr. Murray can perform simple tasks.  *Id*. at 29.  Claimant further argued that Dr. Magness's opinion

supports his contention that he cannot perform simple tasks because Dr. Magness mentions Claimant's symptoms of inattention. *Id*. Finally, Claimant argued that the opinions of Dr. Bauer, Dr. Klein, and Dr. Magness do not comprise competent substantial evidence because all of their opinions were rendered before Claimant's mental health "precipitously declined." *Id*. at 29-30.

The Commissioner argued that the record, as discussed by the ALJ, provides substantial evidence to support the ALJ's RFC finding, and that Claimant failed to prove that he had additional or disabling limitations. *Id*. at 30-32.

Claimant's argument that Dr. Bauer and Dr. Klein were not qualified to render a mental health opinion is without merit. Claimant, who was represented by counsel at the hearing, had an opportunity to challenge Dr. Bauer's and Dr. Klein's qualifications at the hearing but failed to do so. Thus, the Court finds that Claimant waived his right to challenge Dr. Bauer's and Dr. Klein's qualifications. *See Biles v. Colvin*, 2016 WL 3876443, at *10 (N.D. Fla. June 28, 2016) (finding claimant waived argument challenging vocational expert's qualifications where claimant stated she had no objection to the vocational expert serving as such in the case).

Claimant's argument that Dr. Magness did not address Claimant's ability to perform simple tasks is also without merit, as Dr. Magness's evaluation contains evidence that supports the ALJ's RFC determination. For instance, Dr. Magness's evaluation provides that Claimant can add, subtract, multiply and divide single digit and multiple digit numbers; that Claimant can work with fractions, do basic algebra, and work with percentages; that Claimant denied any major learning problems on the job; that Claimant exhibited good basic functioning; that Claimant was cooperative and answered all questions asked of him; that Claimant was alert and well oriented; that Claimant did not evidence symptoms of psychosis and denied compulsions or obsessions; that Claimant demonstrated good recall of recent and remote events; that Claimant's speech and

thought processes were goal-directed, logical, and coherent; that there was no evidence of a formal thought disorder; that Claimant's GAF score was 75; and that Claimant's ability to handle funds is adequate based on Claimant's intellectual functioning. R. 712-19. Thus, it was not error for the ALJ to rely, in part, on Dr. Magness's evaluation when determining that Claimant was capable of performing simple tasks.

Claimant's argument that Dr. Magness's opinion supports the fact that Claimant cannot perform simple tasks because Dr. Magness mentions Claimant's symptoms of inattention is also without merit. As previously discussed, the standard is not whether some portion of Dr. Magness's evaluation supports Claimant's interpretation. Rather, the issue is whether there is substantial evidence to support the ALJ's interpretation. *Barnes*, 932 F.2d at 1358 ("Even if we find that the evidence preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence.") (citation omitted). For the reasons previously discussed, the Court finds that the ALJ's interpretation is supported by substantial evidence.

Finally, Claimant's last argument – that the opinions of Dr. Bauer, Dr. Klein, and Dr. Magness do not comprise competent substantial evidence because all of their opinions were rendered before Claimant's mental health "precipitously declined" – is without merit. As previously discussed, Dr. Fleischmann's statement that Claimant had deteriorated in recent years appeared to be referring to a deterioration since Claimant had been in high-school and worked at "Publix," not since Claimant had begun applying for disability and had been evaluated by Dr. Bauer, Dr. Klein, and Dr. Magness. R. 886. And regardless, the evidence does not support a deterioration in Claimant's condition sufficient to negate all of the evidence that came before Dr. Fleischmann's evaluation. Claimant scored similarly on the WAIS-IV test when evaluated by Dr. Fleischmann and Dr. Magness, and nothing in Dr. Fleischmann's evaluation evidences a

significant deterioration of Claimant's condition since Claimant was evaluated and completed function reports in 2012. R. 396-404, 424-31, 712-19, 879-92.

## IV. CONCLUSION

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**; and

2. The Clerk of Court is directed to enter judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in in Orlando, Florida on September 19, 2017.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Janet Mahon
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Office
3505 Lake Lynda Drive
Suite 300
Orlando, FL 32817-9801